IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Action No.: 1:22-cv-254

| | | |
|---|---|---|
| DAKOTA HEALEY, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | **MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF SETTLEMENT OF COLLECTIVE ACTION** |
| COPPER PENNY RUTHERFORDTON, LLC, and MICHELLE GREF, | ) ) ) | |
| Defendants. | ) ) | |

## I.    INTRODUCTION

Named Plaintiff[1] Dakota Healey ("Named Plaintiff"), individually and on behalf of all others similarly situated, and Defendants Copper Penny Rutherfordton, LLC ("Copper Penny") and Michelle Gref ("Gref") (collectively, "Defendants") (together, the "Parties") have agreed to resolve the above-captioned lawsuit on a collective basis under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

The settlement satisfies the criteria for approval of an FLSA collective action settlement, as it resolves a *bona fide* dispute, was reached after contested litigation, and was the result of arm's-length settlement negotiations between counsel.   Accordingly, Plaintiff seeks, and Defendant does not oppose, court approval of the Settlement Agreement and Release (the "Settlement Agreement").  A copy of the Settlement Agreement is attached hereto as Exhibit 1.

---

[1] Unless otherwise specifically defined herein, all capitalized terms are defined in the Settlement Agreement and Release.  *See* Settlement Agreement, ¶ 10 *et seq.*

## II.     FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Defendant Copper Penny is a restaurant and grill located in Rutherfordton, North Carolina. (Pl.'s Compl., ¶ 9, ECF No. 1.)  Defendant Gref is Co-Owner of Copper Penny.  (Pl.'s Compl., ¶ 10.) Named Plaintiff worked for Defendants at Copper Penny as a Server/Bartender from January 2021 until about November 23, 2022.  (Pl.'s Compl., ¶ 8.)  Named Plaintiff was compensated with tips from customers and a sub-minimum wage paid by Defendants.  (Pl.'s Compl., ¶ 19.)  Named Plaintiff filed her Collective Action Complaint on December 12, 2022, alleging that Defendants violated the FLSA by implementing a tip-out policy whereby Defendants required servers and bartenders ("Tipped Employees") to share tips with non-Tipped Employees while paying Tipped Employees a sub-minimum wage.  (Pl.'s Compl., ¶ 19.)  Defendants' records indicate that the tip-out policy at issue in this case was in effect from March 1, 2022 through November 27, 2022. (Gibbons Decl., ¶ 9.[2])  Named Plaintiff filed a Motion to Conditionally Certify a Collective Action and Facilitate Notice Pursuant to 29 U.S.C. § 216(b) on December 8, 2022.  (ECF No. 6.)

Defendants deny any liability for alleged failure to pay wages under the FLSA, deny that collective action treatment would be appropriate in litigation and disputes the claims asserted in the Lawsuit.  (*Id.*)

Mindful of the costs and uncertainty associated with litigation, the Parties agreed to work together to explore the possibility of an early resolution of the matter.  (*Id.* at ¶ 10.)  The Parties collected and exchanged pre-discovery information and documentation, including timekeeping and payroll records for each member of the Settlement Collective.  (*Id.*)  After months of settlement discussions, the Parties agreed to settle the Lawsuit, the terms of which are memorialized in the Settlement Agreement.  (*Id.*)

---

[2] The Declaration of Philip J. Gibbons is filed contemporaneously with this Memorandum.

## III.    SUMMARY OF THE SETTLEMENT TERMS

The Settlement Agreement provides that the case will be certified as a collective action pursuant to 29 U.S.C. § 216(b) for settlement only and establishes a settlement fund of $174,000.00 ("Gross Settlement Amount") from which Named Plaintiff and Settlement Collective Members may claim a settlement award.  (*See* Ex. 1, at § 10(j).)  The Gross Settlement Amount is the maximum amount that Defendants will pay in connection with the settlement, including Court-approved attorneys' fees and costs, settlement administration costs, and a service award to Named Plaintiff in the amount of $5,000.  (*Id*. at § 10(j), 10(m); *see also* § 10(t) & 10(u).)  The Net Settlement Amount, which is $110,094, is the total amount available to the Settlement Collective Members who timely submit Claim Forms.  All Settlement Collective Members are eligible to receive a settlement award based on the following formula:

a.      Utilizing Defendants' time and payroll records, determine the sub-minimum hourly rate paid to each Settlement Collective Member between March 1, 2022 and November 27, 2022 ("Sub-minimum Hourly Rate"). Calculate the "Tip Credit Rate" for each Settlement Collective Member by subtracting the Sub-minimum Hourly Rate from the federal minimum wage rate.

b.      Utilizing Defendants' time and payroll records, determine the total number of hours worked by each Settlement Collective Member between March 1, 2022 and November 27, 2022 ("Hours Worked").

c.      Multiply the Hours Worked times the Tip Credit Rate to determine the "Tip Credit Denominator" for each Settlement Collective Member. Calculate the "Total Tip Credit Denominator" by adding the sum of all Tip Credit Denominators for the Settlement Collective Members.

d.      Divide the Tip Credit Denominator for each Settlement Collective Member into the Total Tip Credit Denominator to calculate each individual Settlement Collective Member's "Settlement Percentage Share."

e.      Multiply each individual Settlement Collective Member's Settlement Percentage Share by the Net Settlement Amount to determine the putative Collective Member's estimated individual settlement amount.

(*Id*. at ¶ § 20.)

Following Court approval, the Settlement Administrator will mail the Notice of Collective Action Settlement ("Settlement Notice") (Ex. 1, pp. 16–23,) Claim Forms (Ex. 1, pp. 24–26,) and Tax Forms to all Settlement Collective Members (collectively the "Initial Mailing."). (*Id.* at § 16(f).) To recover a Settlement Award, a Settlement Collective Member must complete in full and return a Claim Form and Tax Forms on or before forty-five days following the Initial Mailing ("the Opt-In Period"). (*Id.* at ¶ 10(d).) Twenty-five calendar days after the Initial Mailing, the Settlement Administrator shall send a Reminder Notice (Ex. 1, pp. 27–28.,) to any Settlement Collective Member who was sent, but has not yet returned, a Claim Form and Tax Forms in accordance with the Settlement Agreement. (*Id.* at § 16(g).) Any Settlement Notice and Claim Form returned to the Settlement Administrator with a forwarding address shall be re-mailed within three business days following receipt of the returned mail. (*Id.* at § 16(h).) If any Settlement Notice and Claim Form is returned to the Settlement Administrator without a forwarding address, the Settlement Administrator shall undertake reasonable efforts to search for the correct address, and shall promptly re-mail the Settlement Notice and Claim Form to any newly found address. (*Id.*) In no circumstance shall any re-mailing extend the Opt-In Period. (*Id.*)

Subject to approval of the Court, the Parties agree that Gibbons Law Group, PLLC ("Collective Counsel") will serve as the Settlement Administrator. (*Id.* at § 10(m) & 10(u).) The Settlement Administration Costs are estimated not to exceed $500.00 and will be paid from the Gross Settlement Amount. (*Id.*) Pursuant to the Settlement Agreement and subject to Court approval, Named Plaintiff requests, and Defendant does not oppose, a service award in the amount of $5,000.00 in recognition of her assistance in obtaining the settlement for the collective and the risks she undertook to do so. (*Id.* at § 10(t).) Finally, pursuant to the Settlement Agreement and subject to Court approval, Named Plaintiff requests, and Defendant does not oppose an award of

one-third (1/3) of the Gross Settlement Amount for attorneys' fees ($58,000), plus reimbursement of reasonable out-of-pocket costs of $406, incurred in litigating this case and achieving a substantial settlement on behalf of Named Plaintiff and the Settlement Collective Members.  (*Id.* at § 10(m).)

## IV.  ARGUMENT

### A.    The District Court is Authorized to Certify A Collective Action For Settlement Purposes, Grant Approval of the Settlement Agreement, and Issue Notice of the Agreement to the Settlement Collective Members

The collective action provision of the FLSA allows for one or more employees to bring an action "on behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b); *Hoffman-La Roche Inc. v. Sperling*, 493 U.S.165, 170 (1989).  To serve the "broad remedial purpose" of the FLSA, courts have the power to authorize notice to other potential class members of their rights to "opt-in" to a pending collective action.  *Id.*  These early notices are helpful to protect against misleading communications by the parties, resolve disputes regarding the content of any notice, prevent the proliferation of multiple individual lawsuits, assure efficient joiner of additional parties, and expedite resolution of the dispute.  *Id.* at 170-172.

In deciding whether an FLSA action may proceed as a collective action, courts in this Circuit have adopted a two-step inquiry.  *Adams v. Citicorp Credit Servs.,* 93 F.Supp.3d 441, 452-53 (M.D.N.C. 2015).  At the initial "notice stage," the Court determines whether Named Plaintiff and potential opt-in plaintiffs are "similarly situated" to merit sending notice of the action to possible members of the class.  If they are, additional plaintiffs are permitted to "opt-in" to the lawsuit.  *Id.*  At the notice stage,

> [p]laintiffs generally need only make a relatively modest factual showing that a common policy, scheme, or plan [that violated the law] exists.  To meet this burden and to demonstrate that potential class members are similarly situated, [p]laintiffs must set forth more than vague allegations with meager factual support regarding a

common policy to violate the FLSA. Their evidence need not, however, enable the court to determine conclusively whether a class of similarly situated plaintiffs exists, and it need not include evidence that the company has a formal policy [that violates the FLSA]

*Id.* at 453 (quoting *Mitchel v. Crosby Corp.,* 2012 WL 4005535 at *2-3 (D.Md. 2012)).

For purposes of the Agreement and settlement only, the Parties have agreed that Named Plaintiff and the Settlement Collective Members are similarly situated in accordance with the requirements of the FLSA. (Gibbons Decl. ¶ 14; Ex. 1, § 8.) Notwithstanding the agreement of the Parties for settlement purposes, a finding that Named Plaintiff and Settlement Collective Members are similarly situated is warranted for certification and settlement purposes as they worked at the same job site and were subject to a common practice, policy, or plan where Named Plaintiff alleges that pursuant to Defendants' uniform policy and practice, she and the Settlement Collective Members were required to share tips with non-Tipped Employees while being paid a sub-minimum wage. (Pl.'s Compl., ¶ 19.) Under these facts, the Court should find that Named Plaintiff and the Settlement Collective Members are similarly situated for purposes of this proposed FLSA collective action settlement and conditionally certify this matter as a collective action for settlement purposes.

## B.     Applicable Legal Standard for Approval of FLSA Settlements

The standard for approval of an FLSA settlement is straightforward: a district court should approve a settlement if it was reached through contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute. *Latham v. Branch Banking and Trust Co.,* 2014 WL 464236, at *1 (M.D.N.C. Jan. 14, 2014). In evaluating whether a settlement is reasonable, adequate, and fair, a court should consider: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel representing the

plaintiffs; (5) the opinions of Collective Counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of the plaintiffs' success on the merits and the amount of the settlement in relation to potential recovery. *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 U.S. Dist. LEXIS 89136 at *29 (E.D. Va. 2009).

The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns present in a Rule 23 settlement. Indeed, "[p]arties may elect to opt in to an FLSA collective, but the failure to do so does not prevent them from bringing their own suits at a later date." *Diaz v. Scores Holding Co., Inc.*, 2011 WL 6399468, at *2 (S.D.N.Y. 2011). Generally, "[w]hen a settlement agreement has been the subject of arm's-length bargaining, with Collective Counsel in a position to evaluate accurately the chances of the class prevailing if the case went to trial and where no objections are raised by any of the affected parties, there is a strong presumption in favor of the settlement." *Houston v. URS Corp.*, 2009 WL 2474055, at *5 (E.D. Va. 2009).

### C. **The Parties Have a *Bona Fide* Dispute**

Court approval of FLSA settlements requires that the settlement resolve a *bona fide* dispute over FLSA provisions. *Lomascolo*, 2009 WL 3094955, at *16 (citing *Lynn's Food Stores Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982)). Here, Named Plaintiff alleges that Defendants violated the FLSA by implementing a tipping policy whereby Defendants required Tipped Employees to share tips with non-Tipped Employees while taking a tip credit. (Pl.'s Compl., ¶ 19.) Defendants' records indicate that the tip-out policy at issue in this case was in effect from March 1, 2022 through November 27, 2022. (Gibbons Decl., ¶ 9.) Defendants deny these allegations. (*Id.*) Thus, significant factual and legal questions remain and the Court should find that a *bona fide* dispute exists between the parties.

### D. The Settlement Agreement Is Fair and Reasonable, and Should Be Approved

#### 1. The Parties Exchanged Sufficient Discovery.

Although the Parties did not engage in formal discovery, they voluntarily shared payroll records, time and attendance records, and other data relevant to the claims at issue to facilitate settlement discussions. (*Id*. at ¶ 11.) Based on this information, Named Plaintiff and Collective Counsel reviewed, analyzed, and formulated potential damage calculations under the FLSA for Named Plaintiff and the Settlement Collective Members. (*Id.*) Utilizing these calculations and investigation, Named Plaintiff concluded she had sufficient information about her claims, the claims of similarly situated employees, and Defendants' defenses from which to fairly settle her case. (*Id.*) The amount of discovery was sufficient and supports approval of the settlement. *See e.g., Myers v. Loomis Armored US, LLC*, 2020 WL 1815902 at *4 (W.D.N.C. 2020).

#### 2. The Stage of the Proceedings Weighs in Favor of Approval.

Although the Settlement Award payments are being made available at an early stage of the litigation, the complexity, expense, and likely duration of this litigation also weighs heavily in favor of the Court finding that the settlement is adequate, fair, and reasonable. Resolution of the disputed issues would require substantial time and resources, including dispositive motions, conditional certification and decertification, the potential of a multiple-day trial, and possible appeals and post-trial motions. (Gibbons Decl. ¶ 12.) Although these issues remain unresolved, counsel for the Parties had sufficient information to assess the respective strengths and weaknesses of their case and conclude that the Settlement is in the best interests of the Parties. (*Id.*) Without the Settlement Agreement, the statute of limitations would continue to run on the Settlement Collective Members' claims. (*Id.*) Accordingly, both Parties recognize that "these proceedings advanced to a stage sufficient to permit the Parties and their counsel to obtain and review evidence,

to evaluate their claims and defenses and to engage in informed arm's length negotiations with the understanding that it would be a difficult and costly undertaking to proceed to trial." *Lomascolo*, 2009 WL 3094955, at *11. Accordingly, Named Plaintiff believes that the settlement achieved at this stage is an excellent result for her and the Settlement Collective Members that provides immediate compensation without years of protracted litigation and delay. (Gibbons Decl. ¶ 13.)

### 3. The Settlement Agreement was Fairly and Honestly Negotiated.

"In the absence of any evidence to the contrary," a presumption of fairness arises where a settlement is reached in arm's-length negotiations between capable, experienced counsel after significant exchange of information. *Winingear v. City of Norfolk*, No. 2:12cv569, 2014 WL 3500996, at *3 (E.D. Va. 2014). Here, there is no evidence of fraud or collusion present with respect to the Parties' Settlement Agreement, and this factor favors the finding of a fair and reasonable settlement. (Gibbons Decl. ¶ 13.) The settlement terms were reached in an adversarial proceeding through arm's length negotiations between capable attorneys with extensive experience with wage and hour claims. (*Id.*) The terms were reached only after Collective Counsel engaged in significant investigation and diligence regarding the facts of the case and the merits of Named Plaintiff's and the Settlement Collective Members' claims, their likelihood of success at trial, as well as Defendant's defenses. (*Id.*) There can be no doubt that the Parties were well-informed about the strengths and weaknesses of their respective positions, especially considering both Collective Counsel's and Defendant's Counsel's experience at handling similar claims involving FLSA violations. (*Id.*)

### 4. Named Plaintiff and the Settlement Collective Members Were Represented by Experienced Counsel.

Named Plaintiff and the Settlement Collective Members had the benefit of legal counsel with extensive knowledge and experience in wage and hour litigation. (*Id.* at ¶¶ 2-10, 13.) The

undersigned counsel was familiar with the facts and law in this case and has negotiated numerous FLSA collective action settlements. (*Id.*)

### 5. Collective Counsel and Named Plaintiff Support the Agreement.

In Collective Counsel's view, the Agreement provides substantial benefits to Named Plaintiff and the Settlement Collective Members considering the attendant risks, difficulties, delays and uncertainties of litigation, trial, and post-trial proceedings. (*Id.* at ¶ 18.) The Agreement provides relief to Named Plaintiff and the Participating Collective Members and eliminates the inherent risks both sides would bear if this case continued. (*Id.*) Under these circumstances, there is a strong presumption of fairness. *See Lomascolo*, 2009 WL 3094955, at *10 ("A court is entitled to rely on the judgment of experienced counsel for the parties in performing this balancing task and absent fraud, collusion or the like, a court should be hesitant to substitute its own judgment for that of counsel.") Named Plaintiff was apprised of the terms of the Agreement and authorized Collective Counsel to accept the Settlement. (Gibbons Decl. ¶ 19.) As discussed below, the recovery here is excellent given the range of potential recovery and the assumptions used in calculating Named Plaintiff's and Settlement Collective Members' damages.

### 6. The Probability of Success on the Merits and the Amount of the Settlement in Relation to Potential Recovery.

The probability of Named Plaintiff's success on the merits and other ancillary issues is disputed by the Parties. (*Id.* at ¶ 15.) Here, based on the parties' calculations and reasonable, informed assumptions from the data exchanged, if Named Plaintiff prevailed on her tip credit violation claim, the total minimum wage damages available to her and the Settlement Collective Members would be $86,325.48. If Defendants cannot establish their "good faith" affirmative defense, the Court could also award liquidated damages in an amount equal to the total minimum wage damages. Here, however, Defendants deny they violated the tip credit provisions of the

FLSA and they contend that their actions were made in good faith. Accordingly, Named Plaintiff could (1) lose her FLSA tip credit claim and be awarded no damages; (2) Named Plaintiff could be awarded minimum wage damages of $86,325.48 if she prevailed on her FLSA tip credit claim, but be denied liquidated damages; or (3) Named Plaintiff could be awarded minimum wage and liquidated damages of $172,650.96 if she prevailed on her FLSA tip credit claim and be awarded liquidated damages.

Here, the Net Settlement Amount of $110,094 provides Settlement Collective Members with reimbursement for 100% of the potential unpaid minimum wage damages resulting from the alleged FLSA tip-credit violation and 27.5% of the maximum potential liquidated damages. (Gibbons Decl. ¶ 16.) Each Settlement Collective Members' individual settlement award is based on each Settlement Collective Member's hourly pay rate and the number of hours worked from March 1, 2022 to November 27, 2022, so that individuals who worked more during the relevant time period will receive a larger award in comparison. (*Id.*; *see also* Ex. 1, at § 20.)

Plaintiff believes she would ultimately prevail on her FLSA tip credit claim and recover both minimum wage and liquidated damages. Defendants' dispute that Plaintiff will recover any damages whatsoever. If Plaintiff prevailed on her FLSA tip credit claim without an award of liquidated damages, the total minimum wage damage recovery would be less than the Net Settlement Amount available to Plaintiff and the Settlement Collective Members. Ultimately, the Net Settlement Amount reflects a favorable compromise that provides 100% of the estimated unpaid minimum wages, plus approximately 27.5% of liquidated damages, free and clear of attorney's fees paid to Collective Counsel. (Gibbons Decl. ¶ 16.) Accordingly, these factors support approval of the Parties' Settlement Agreement as fair and reasonable.

**E.     The Notice of Settlement Sufficiently Notifies Settlement Collective Members of Their Rights Under the Settlement.**

The Court should also approve the proposed Settlement Notice, (Ex. 1, pp. 16–23,) which sufficiently informs Settlement Collective Members of the nature of the Litigation and terms of the Settlement Agreement, their individual Settlement Awards, the scope of the Released Claims, the payment of Attorneys' Fees and Litigation Costs, and how they may opt-in to or not opt-in to the settlement by cashing or not cashing an enclosed settlement check. *See Cerrato v. Alliance Material Handling, Inc.*, No. WDQ-13-2774, 2014 WL 1779823, at *6 (D. Md. 2014*)* (approving collective notice that, *inter alia*, described settlement terms and fee allocation).

**F.     The Service Award to Named Plaintiff Is Justified and Should Be Approved**

Pursuant to the Parties' Settlement Agreement and subject to the approval of the Court, Defendants have agreed to provide the Named Plaintiff with a Service Award payment in the amount of $5,000.00 for her significant contributions to the prosecution and resolution of the lawsuit.  (*See* Ex. 1, §§ 10(m),(t).)

Here, the role of the Named Plaintiff was crucial.  She sacrificed her time to prosecute this action on behalf of her fellow current and former colleagues, and routinely conferred and corresponded with Counsel on a regular basis, staying abreast of current pleadings, and settlement-related informal discovery.  (Gibbons Decl. ¶ 19.); *see Speaks v. U.S. Tobacco Coop., Inc.*, No. 5:12-CV-729-D, 2018 WL 988083, at *3 (E.D.N.C. Feb. 20, 2018) (noting that "without incentive awards, the class representatives would not be rewarded for their participation or for the risk of pursuing this action with no promise of a successful outcome.").

Finally, the Service Award payment of $5,000.00 is consistent with those approved in similar wage and hour collective actions within this Circuit.  *See Kay Co. v. Equitable Prod. Co.*,

749 F.Supp.2d 455, 473 (S.D.W. Va. 2010) (awarding $15,000 to each of the six class representatives); *Speaks*, 2018 WL 988083, at *3 (approving service awards totaling $100,000 to eleven class representatives); *Savani v. URS Prof'l Sols. LLC*, 121 F.Supp.3d 564, 577 (D.S.C. 2015) (finding $15,000 service award to individual class representative reasonable). The $5,000.00 Service Award payment requested by Named Plaintiff represents 2.9% of the $174,000.00 Gross Settlement Amount. (Ex. 1, §§ 10(m),(t).) This payment is comparable to participation award payments made to plaintiffs in similar wage and hour actions. *See e.g.*, *DeWitt v. Darlington Cnty., S.C.*, No. 4:11-CV-740-RBH, 2013 WL 6408371, at * 15 (D.S.C. Dec. 6, 2013) (approving incentive award to class representatives of $7,500.00, which represented 3.33% of the settlement fund). For all of these reasons, the Service Award payment of $5,000.00 to Named Plaintiff Dakota Healey should be approved as fair and reasonable.

### G.   Attorney's Fees and Litigation Costs Should Be Approved

In connection with this motion, Named Plaintiff respectfully moves this Court for an order approving as reasonable Collective Counsel's request for attorneys' fees and out-of-pocket litigation costs.

### 1.   The Fee Shifting Provisions of the FLSA Provide for Attorney's Fees

The FLSA allows for a plaintiff to recover his/her attorneys' fees and expenses under the statute's fee-shifting provisions. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *Lane v. Ko-Me, LLC, Case*, 2011 WL 3880427, at *2 (D. Md. 2011). Similarly, the FLSA provides for the reimbursement of costs. 29 U.S.C. § 216(b). Awards of reasonable out-of-pocket costs incurred by counsel are routinely approved by

courts as part of FLSA settlements. *Hackett v. ADF Rest. Investments*, 259 F. Supp. 3d 360, 369 (D. Md. 2016).

Collective Counsel requests a fee award of one-third (1/3) of the Gross Settlement Amount. (Gibbons Decl. ¶ 17; Ex. 1, § 18(b)(i).) To date, Collective Counsel has spent over 128.50 hours advocating on behalf of Named Plaintiff and the Settlement Collective Members and incurred lodestar fees of $40,789.64. (Gibbons Decl. ¶ 21 ; Gibbons Decl. Ex. A.) Attorney's fees equivalent to one-third of the Gross Settlement Amount are reasonable and should be approved.

### 2. The Percentage of the Fund Method, Supplemented with the Lodestar Cross-check Should be used to Determine a Fair and Reasonable Fee Award

The Supreme Court has recognized that a lawyer "who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Fourth Circuit has not required a particular method for calculating attorneys' fees in common fund cases, but "a fee award determined by percentage is preferred over the lodestar method in common cases such as this one." *Hatzey v. Divurgent, LLC*, 2018 WL 5624300, at *4 (E.D. Va. Oct. 19, 2018); *see also, e.g.*, *Savani*, 121 F.Supp.3d at 568 ("Within this Circuit, the percentage-of-recovery approach is not only permitted but is the preferred approach to determine attorneys' fees."); *Hall v. Higher One Machines, Inc.*, No. 5-15-CV-670-F, 2016 WL 5416582, at *7 (E.D.N.C. Sept. 26, 2016) (quoting *Phillips v. Triad Guar., Inc.*, No. 1:09CV71, 2016 WL 2636289, at *2 (M.D.N.C. May 9, 2016) ("the percentage of the fund method, supplemented with the lodestar cross-check, is the appropriate means by which to determine an award of attorneys' fees in this case.")).

There are several reasons that the courts prefer the percentage method. First, the percentage method "better aligns the interests of Collective Counsel and class members because it ties the

attorney's fee award to the overall result achieved rather than the hours expended by the attorneys." *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 759 (S.D.W. Va. 2009). Second, the percentage of the fund method promotes early resolution and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours. *Id.* Third, the percentage method preserves judicial resources because it "is less cumbersome to apply than the lodestar computation." *In re Wachovia Corp. ERISA Litig.*, No. 3:09cv262, 2011 WL 5037183, at *2 (W.D.N.C. Oct. 24, 2011).

In applying the common fund method, the Supreme Court has held that it is appropriate to award attorneys' fees as a percentage of the gross settlement amount, even where amounts to be paid to the settlement class members who do not file claims will revert to the Defendant. *See Boeing*, 444 U.S. at 480-81 ("Although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee member in the exact proportion that the value of his claim bears to the total recovery.")

"Even where the percentage method is used, however, the lodestar calculation may still be applied as a 'cross-check' in the determination of a reasonable percentage." *In re Wachovia Corp.*, 2011 WL 5037183, at *3. "Importantly, 'where the lodestar fee is used as a mere cross-check to the percentage method of determining reasonable attorney's fees, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Fangman v. Genuine Title, LLC*, No. RDB-14-0081, 2017 WL 2591525, at *6 (D. Md. June 15, 2017) (citing *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 688 (D. Md. 2013)).

### 3. The Requested Fees Are Reasonable Under the Common Fund Method

"In evaluating the reasonableness of attorney's fees under the common-fund doctrine in class action cases, courts generally examine the following factors: '(1) the results obtained for the class, (2) the quality, skill and efficiency of the attorneys involved, (3) the complexity and duration of the case, (4) the risk of nonpayment, (5) awards in similar cases, (6) objections, and (7) public policy.'" *DeWitt*, 2013 WL 6408371, at *7 (quoting *Kay Co.*, 749 F. Supp. 2d 455, 464 (S.D. W. Va. 2010); *see also Scott v. Family Dollar Stores, Inc.*, No. 3:08-cv-00540, 2018 WL 1321048, at *5 (W.D.N.C. March 14, 2018).

#### a. Results obtained for the Settlement Collective Members.

Success warranting attorneys' fees occurs when the moving party prevails "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Arvinger v. Mayor & City Council of Baltimore*, 31 F.3d 196, 200 (4th Cir. 1994). Named Plaintiff filed this action as a collective action under the FLSA. (Pl.'s Compl., ¶¶ 2–3; Gibbons Decl. ¶ 9.) Based on the parties' calculations and reasonable, informed assumptions from the data exchanged, the Net Settlement Amount provides 100% of the estimated unpaid minimum wage damages, plus approximately 27.5% of liquidated damages, free and clear of attorney's fees paid to Collective Counsel. (Gibbons Decl. ¶ 16.) Each Settlement Collective Members' individual settlement award is based on each Settlement Collective Member's hourly pay rate and the number of hour worked from March 1, 2022 to November 27, 2022, so that individuals who worked more during the relevant time period will receive a larger award in comparison. (*Id.*) The relief obtained under the FLSA is excellent. Defendants do not concede liability and still contend that, absent settlement, Named Plaintiff and the Settlement Collective Members would receive no unpaid minimum wage or liquidated damages under the FLSA or an amount less than they will receive

from the Net Settlement Fund.  (*Id.*)  The Agreement reflects a compromise that recognizes both the strengths and weaknesses of the Parties' respective arguments.  (*Id.*)  This factor supports the approval of Collective Counsel's attorney fee request.

b. Quality, skill, and efficiency of attorneys involved.

"Employment law is a very dynamic area of the law, requiring counsel to stay abreast of developments in both state and federal law.  Moreover, as with any litigation in federal court, attorneys in employment law cases must be thoroughly familiar with developments and changes in the Federal Rules of Civil Procedure . . . ."  *DeWitt*, 2013 WL 6408371, at *11.  Named Plaintiff's lead attorney, Philip J. Gibbons, Jr. has substantial experience litigating wage and hours cases, which allowed Named Plaintiff to obtain an excellent result in an effective and efficient manner.  (Gibbons Decl. ¶¶ 2–10.)  Mr. Gibbons' experience allowed the parties to stipulate to conditional certification, avoiding the motion practice typically associated with this process.  (*Id.*)  Similarly, Mr. Gibbons' experience resulted in a settlement with no expensive discovery and dispositive motion practice.  This case could have involved protracted litigation over the FLSA's regulations, liability, and damages.  Instead, Mr. Gibbons drew on his over 20 years of employment law experience to obtain the information to negotiate the settlement, without engaging in any wasteful litigation activities.  (*Id.*)  This factor supports the approval of Collective Counsel's attorney fee request.

c. Complexity and duration of case.

Courts have recognized that wage and hour cases involve complex legal issues.  *See e.g.*, *Barrentine v. Arkansas.-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981) ("FLSA claims typically involve complex mixed questions of fact and law . . . These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and

administrative rulings."); *DeWitt*, 2013 WL 6408371, at *8 ("In the Court's experience, overtime cases under the Fair Labor Standards Act can be very complex and difficult, involving the interaction among various statutes, regulations, and evolving case-law."). Resolution required Collective Counsel to assess and analyze Named Plaintiff's and Settlement Collective Members' payroll documents and attendance data over the Relevant Time Period and estimate amount of unpaid wages. (Gibbons Decl. ¶ 11.) The complexity and duration of the case warrants approval of the fee requested by Collective Counsel.

d. Risk of non-payment.

Collective Counsel handled this case on a contingency fee basis with no assurance of payment for their services. (*Id*. at ¶ 29.) Under these circumstances, the risk of non-payment weighs in favor of the award of fees requested by Collective Counsel. This factor supports the approval of Collective Counsel's attorney fee request.

e. Awards in similar cases.

Attorney fee awards in common fund cases are often calculated as a percentage of the fund created. In this Circuit, numerous courts have awarded fees equal to one-third of the total settlement fund. *See e.g.*, *DeWitt*, 2013 WL 6408371, at *9 ("One-third of the recovery appears to be a fairly common percentage in contingency cases . . ."); *Hackett v. ADF Rest. Investments*, 259 F. Supp. 3d 360, 368-69 (D. Md. 2016) (awarding one-third of settlement amount); *McClaran v. Carolina Ale House Operating Co., LLC*, No. 3:14-CV-03884-MBS, 2015 WL 5037836, at *5 (D. S.C. Aug. 26, 2015). In a number of cases, courts found that a fee-award of one-third of the settlement fund was reasonable.") This factor supports the approval of Collective Counsel's attorney fee request.

f. There are no objections to the proposed attorneys' fee.

Named Plaintiff has approved the terms of the Settlement Agreement, including an award of attorneys' fees equal to one-third of the Gross Settlement Amount. (Gibbons Decl. ¶¶ 19–20.) This lawsuit is being settled as an opt-in collective action under the FLSA. Unlike a Rule 23 settlement, individuals who may object to an award of attorney's fees, if any, are not obligated to opt-in to the lawsuit and do not waive their rights under the FLSA or any other state or federal law by choosing not to participate. Moreover, each eligible Settlement Collective Member will be apprised of the attorney's fees provided by the settlement, his or her estimated settlement share, the formula for calculating the settlement, and a procedure for resolving any challenge to the calculation prior to making the decision to participate in the settlement. (Exs. 2 & 3.) This factor supports the approval of Collective Counsel's attorney fee request.

> g. Public policy considerations weigh in favor of granting Collective Counsel's requested fees.

"Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Latham*, 2014 WL 464236, at *2 (citing *Aros v. United Rentals, Inc.*, No. 3:10-CV-73 JCH, 2012 WL 3060470, at *4 (D. Conn. 2012)). "[P]ublic policy favors adequate awards of attorney's fees in cases under the FLSA to encourage aggrieved plaintiffs to bring these cases and to provide incentives for plaintiffs' counsel to take such cases." *DeWitt*, 2013 WL 6408371, at *10. This factor supports the approval of Collective Counsel's attorney fee request.

## 4. A Lode-Star Cross Check Ensures the Percentage Amount is Fair and Reasonable

The lodestar is defined as "the number of hours reasonably expended, multiplied by a reasonable hourly rate." *Rum Creek Coal Sales, Inc. v. Capertone*, 31 F.3d 169, 174 (4th Cir. 1994). Courts in this circuit have found that a lodestar multiplier ranging from 2 to 4.5

demonstrates the reasonableness of a requested percentage fee. *Fangman*, 2017 WL 2591525, at

*6 (citations omitted). In *Barber v. Kimbrell's, Inc.*, the Fourth Circuit articulated 12 factors for

courts to consider in determining the reasonableness of lodestar fee applications:

(1)    the time and labor expended;
(2)    the novelty and difficulty of the questions raised;
(3)    the skill required to properly perform the legal serves rendered;
(4)    the attorney's opportunity costs in pressing the instant litigation;
(5)    the customary fee for like work;
(6)    the attorney's expectations at the outset of the litigation;
(7)    the time limitations imposed by the client or circumstances;
(8)    the amount in controversy;
(9)    the experience, reputation and ability of the attorney;
(10)   the undesirability of the case within the legal community in which the suit arose;
(11)   the nature and length of the professional relationship between attorney and client; and
(12)   attorney's fee awards in similar cases.

577 F.2d 216, 226 n.28 (4th Cir. 1978). An analysis of these factors demonstrates that the fee

award requested by Collective Counsel is reasonable.

> a.  The time and labor expended warrants approval of the requested fees.

Collective Counsel spent significant effort and time to achieve the settlement. As set forth

in the Declaration of Philip J. Gibbons, Jr., Collective Counsel incurred fees of $40,789.64 to date,

which reflects a decrease for legal work deemed unnecessary or duplicative. (Gibbons Decl. ¶ 20.)

The Net Settlement Amount, which provides Named Plaintiff and Settlement Collective Members

with 100% recovery of their claims for unpaid minimum wages, plus approximately 27.5% of

potential liquidated damages, was carefully negotiated. Collective Counsel worked diligently on

this case, analyzing client documents, developing the theory of liability, obtaining voluntary

discovery, reviewing, and analyzing records and data for Named Plaintiff and the Settlement

Collective Members, preparing detailed damages analysis, communicating with Named Plaintiff

and the Settlement Collective Members, and researching and drafting the pleadings for preliminary and final approval of the settlement. (*Id*. at ¶ 22.) Collective Counsel will continue to work diligently through the final administration of the settlement. (*Id*.) This factor supports the approval of Collective Counsel's attorney fee request.

b. The novelty and difficulty of the questions raised.

The FLSA is a complicated wage and hour law. This case involved many arguments by Defendants against FLSA liability and proof of damages. To prevail at trial, Collective Counsel would first need to overcome Defendant's arguments regarding liability. Assuming Named Plaintiff succeeded in proving liability, Defendant's arguments regarding its alleged good faith defense could negatively affect the recovery obtained for Named Plaintiff and Settlement Collective Members. (*Id*.) This factor supports the approval of Collective Counsel's attorney fee request.

c. The skill required to properly perform the legal services rendered warrants approval of the requested fees.

Wage and hour collective actions under the FLSA require a high degree of skill and knowledge to litigate effectively and efficiently. (*Id*. at ¶ 15.) This factor supports the approval of Collective Counsel's attorney fee request.

d. Collective Counsel's opportunity costs in filing this case warrant approval of the requested fees.

Collective Counsel accepted this case on a contingency basis. (*Id*. at ¶ 29.) Collective action litigation is time consuming and requires a large commitment of time and resources, including advancing all litigation costs. (*Id*. at ¶ 3.) This time and resource commitment represents a significant opportunity cost in terms of other work that could have been performed during the same period. This factor supports the approval of Collective Counsel's attorney fee request.

e. Collective Counsel's requested fees are consistent with customary fees for like work.

To determine a reasonable attorney's fee, the hourly rate must be calculated in accordance with the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The hourly rates at which Collective Counsel calculated their lodestar have been approved in North Carolina district courts: Collective Counsel, Philip J. Gibbons, Jr. at $500 per hour, Corey M. Stanton at $300 per hour, and Ethan L. Slabosky at $250 per hour. (Gibbons Decl. ¶ 25–28.) The requested lodestar rates for Philip J. Gibbons, Jr. ($500 per hour) Corey M. Stanton ($300 per hour), Ethan L. Slabosky ($250 per hour) are consistent with the "prevailing market rates" in the Western, Middle, and Eastern Districts of North Carolina for experienced employment law attorneys. (*Id.*) This factor supports the approval of Collective Counsel's attorney fee request.

f. Collective Counsel expected a contingent recovery at the outset of litigation, which supports the requested fee.

"Courts have generally recognized that a contingent fee lawyer may have the right to expect a fee greater than if his fee were guaranteed." *Va. Acad. Of Clinical Psychologists v. Blue Shield of Va.*, 543 F. Supp. 126, 148 (E.D. Va. 1982). Collective Counsel's requested fee of one-third is reasonable because Collective Counsel expected a contingent fee at the outset of the litigation. Collective Counsel took on risk of non-payment, the burden of advancing litigation expenses, and the opportunity cost of having to turn down other potentially lucrative work. This factor supports the approval of Collective Counsel's attorney fee request.

g. Time limitations imposed under the circumstances.

Not applicable.

h. Amount in controversy and the results obtained.

In the Fourth Circuit, "the most critical factor in calculating a reasonable fee award is the

degree of success obtained." *Randle v. H&P Capital, Inc.*, 513 F. Appx. 282, 284 (4th Cir. 2013) (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). Collective Counsel negotiated a successful settlement that provided Named Plaintiff and the Settlement Collective Members with notice and the ability to opt into this lawsuit, which provides for the recovery of 100% of their estimated unpaid minimum wage damages and approximately 27.5% of their maximum liquidated damages. (Gibbons Decl. ¶ 16.) This factor supports the approval of Collective Counsel's attorney fee request.

    i. Experience, reputation, and ability of the attorneys.

Collective Counsel has significant experience litigating wage and hour claims. (*Id.* at ¶¶ 2-10, 13.) This experience was instrumental in efficiently settling this matter as an FLSA collective action without the need for protracted litigation. This factor supports the approval of Collective Counsel's attorney fee request.

    j. Undesirability of the case within the legal community in which the suit arose.

There are very few attorneys in the Charlotte legal community that focus primarily on plaintiff-side wage and hour employment law. (*Id.* at ¶ 30.) This would make this case undesirable to many attorneys, and thus supports Collective Counsel's fee request.

    k. Nature and length of the professional relationship between attorney and client.

The relationship between Named Plaintiff and Collective Counsel is limited and counsel anticipates no future work on Named Plaintiff's behalf. (*Id.* ¶ 29.) This factor is neutral regarding an award of attorney's fees.

    l. Attorney's fee awards in similar cases.

As of July 24, 2023, Collective Counsel incurred $40,789.64 in attorneys' fees. (Gibbons Decl. Ex. A – Gibbons Law Group Billing Records.) In preparing Collective Counsel's declaration, counsel decreased or deleted billings that might be considered duplicative or excessive. (*Id.* at ¶ 20.) The one-third fee requested by Collective Counsel is in line with fees awarded in similar cases. For the lodestar crosscheck, the lodestar amount is $40,789.64. (*Id.* at ¶ 21.) This represents a multiplier of 1.42 times above the lodestar amount, (*Id.*,) which is well within the range of reasonable attorneys' fee amounts in common fund cases. *See, e.g.*, *Fangman*, 2017 WL 2591525, at *6 (lodestar multiplier of up to 4.5 generally demonstrates a reasonable attorneys' fee. The lodestar multiplier will be further reduced as Collective Counsel continues to work on this case and complete administration of the Settlement. (Gibbons Decl. at ¶ 21.) This factor supports the approval of Collective Counsel's attorney fee request.

## H.     The Court Should Approve Litigation Costs and Expenses

Collective Counsel requests reimbursement of $406.00 in litigation costs and payment of settlement administration costs not to exceed $500.00 from the Gross Settlement Amount under the Settlement Agreement. (Gibbons Decl. ¶ 17; Ex. 1, §§ 17(b)(i), 18(c).) Attorneys may be compensated for litigation expenses "reasonably incurred by counsel in prosecuting a class action." *In Re Wachovia Corp.*, 2011 WL 5037183, at *7; *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 483 (D. Md. 2014) (reimbursable costs include "reasonable out-of-pocket expenses that are normally charged by an attorney to a fee-paying client," including costs associated with filings and travel).

Similarly, Courts approve reasonable administration fees and costs in FLSA collective action settlements. *See Leigh v. Bottling Grp., LLC*, No. DKC 10-0218, 2012 WL 460468, at *8 (D. Md. Feb. 10, 2012) (approving $15,000 administration fee); *Chrismon v. Meadow Greens Pizza*, No. 5:19-CV-155-BO, 2020 WL 3790866, at *6 (E.D.N.C. July 7, 2020) (approving

$6,860.05 settlement administration fee).

Here, Collective Counsel requests the Court approve reimbursement of the federal court filing fee ($406.00) and settlement administrative costs, not to exceed $500.00. (Gibbons Decl. ¶ 21.)

## V.     CONCLUSION

For the reasons stated herein, Named Plaintiff respectfully requests that the Court grant this Unopposed Motion for Approval of Settlement, and enter the accompanying proposed Approval Order.

Respectfully submitted this 26th day of July 2023.

s/ Philip J. Gibbons, Jr.
Philip J. Gibbons, Jr., NCSB #50276
Corey M. Stanton, NCSB #56255
Ethan L. Slabosky, NCSB #59555
**GIBBONS LAW GROUP, PLLC**
14045 Ballantyne Corporate Place, Suite 325
Charlotte, NC 28277
Telephone: 704-612-0038
Email: phil@gibbonslg.com
         corey@gibbonslg.com
         ethan@gibbonslg.com

*Attorneys for Plaintiff(s)*

## CERTIFICATE OF SERVICE

This is to certify that on July 26, 2023, the undersigned filed the foregoing using the Court's CM/ECF system which will send notification of such filing to the appropriate CM/ECF participants.

s/ Philip J. Gibbons, Jr.
*Attorney for Plaintiff(s)*